IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| P G CREATIVE, INC.,<br>a Florida Corporation, | § § § | |
| Plaintiff, | § | Civil Action No.: 1:18-cv-24299-DPG |
| | § | |
| v. | § | |
| | § | |
| AFFIRM AGENCY LLC, a<br>Wisconsin Limited Liability<br>Company, and<br>STAPLES MARKETING,<br>LLC, a Wisconsin Limited<br>Liability Company, | § § § § § § § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendants. | § | |

## FIRST AMENDED COMPLAINT

Plaintiff P G CREATIVE, Inc. (hereafter "PG Creative" or "Plaintiff") files this, its First Amended Complaint against Defendants Affirm Agency LLC and Staples Marketing, LLC dba Affirm (collectively "Affirm" or "Defendants") and alleges as follows:

### PRELIMINARY STATEMENT

1.      PG Creative seeks relief and recovery from the conduct of the Defendants who have copied and used PG Creative's mark "DOSE OF REALITY" and thereby harmed PG Creative, unjustly profited and enriched themselves and wrongfully expanded their footprint and acclaim in the field of marketing and advertising.

2.      In particular, the Defendants have taken PG Creative's DOSE OF REALITY mark and are using it—and has used it—as the anchoring phrase in a series of public health campaigns implemented in a number of states.  Those campaigns are and have been directed to promoting public awareness of prescription drug abuse and addiction, the exact field of use for

which PG Creative registered its mark DOSE OF REALITY.  While promoting this laudatory objective, Affirm has on information and belief, intentionally enriched themselves and enhanced their reputation with several states as well as the advertising industry, while knowing that the mark DOSE OF REALITY is not their own creation all the while sowing confusion and trading on the creativity of PG Creative while harming the reputation of PG Creative in the marketplace.

3.      Thus, the Defendants have engaged in and are engaged in trademark infringement, unfair competition and false designation of origin under Federal law and violated the Florida Deceptive and Unfair Trade Practices Act and the common laws.

4.      Plaintiff seeks injunctive and monetary relief.

## JURISDICTION

5.      This is an action for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114 *et seq.*, violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*, and violation of the common laws.  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of seventy-five thousand dollars ($75,000) and is between citizens of different states and, arises, at least in part, under the laws of the United States.

6.      This court has jurisdiction over the subject matter pursuant to Section 39 of the Federal Trademark Act, 15 U.S.C. § 1121, and the Judicial Code, 28 U.S.C. §§ 1331, 1332 (a), 1332 (c) and 1338, as well as pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

7.      On information and belief, pursuant to the Florida Long-Arm Statute, § 48.193(1)(a)(2), this Court has personal jurisdiction over the Defendants as a result of

Defendants' actions within the forum tortuously harming the Plaintiff, its reputation and its property.  Further, the exercise of such jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment.

## VENUE

8.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district, and in that a substantial part of property that is the subject of the action is situated in this district.

## PARTIES

9.      Plaintiff PG Creative, an advertising agency, is a Florida corporation with its principal place of business in Miami, Florida.  PG Creative is a for-profit S-Corporation incorporated in the state of Florida in 2002 by Maritza Pensado and Yvonne Garcia.  PG Creative has been creating, offering for sale and selling anti-prescription drug abuse awareness and prevention campaigns and related work (hereinafter, "Prevention Campaign(s)") to a variety of public and private companies and clients including anti-drug coalitions, school districts, colleges, as well as state and local government agencies across the United States.  Since 2004, Plaintiff has sold its services which have now been sold in over twenty-nine states.

10.      Upon information and belief, Defendants Affirm Agency LLC and Staples Marketing, LLC are Wisconsin limited liability companies with their principal place of business in Pewaukee, Wisconsin.  Upon information and belief, Defendant Affirm Agency LLC is a full-service marketing communication agency that creates a variety of advertising, marketing, and public relations campaigns, and Defendant Staples Marketing, LLC, is the parent company for Affirm Agency LLC. It is believed that Defendants were originally founded in 1985 under

Staples Marketing, LLC, and rebranded in 2015 as Affirm Agency LLC in Pewaukee, Wisconsin, while maintaining both corporate entities.

11. Upon information and belief, the agent for service of process for Defendants Affirm Agency LLC and Staples Marketing, LLC, is Daniel Mager, who may be served at N28W23050 Roundy Drive, Unit 100, Pewaukee, Wisconsin 53072-4095.

## FACTS

### I.   PG CREATIVE AND ITS DOSE OF REALITY MARK

12. PG Creative is the owner of valid and subsising United States Trademark Registration No. 5,518,678 registered on July 17, 2018 on the Principal Register of the United States Patent and Trademark Office for the service mark DOSE OF REALITY in a stylized font in International Class 35 (the '678 Registration")[1]. PG Creative is also the owner of pending Trademark Application Serial No. 88/141,315 for the Principal Register of the United States Patent and Trademark Office for the service mark DOSE OF REALITY in standard characters (the '315 Application") (collectively hereinafter the "DOSE OF REALITY mark") within International Class 035. Both the '678 Registration and the '315 Application are for the services of "promoting public awareness of prescription drug abuse and addiction by means of public advocacy." Attached as Exhibit 1 is a true and correct copy of the registration certificate for PG Creative's '678 Registration as amended and attached as Exhibit 2 is a true and correct copy of PG Creative's '315 Application, which each indicate a date of first use at least as early as May 27, 2014.

---

[1] The '678 Registration was amended October 4, 2018 to correct a clerical error as to date of first use which is May 27, 2014.

13.     In 2014, PG Creative introduced its Dose of Reality Prevention Campaign as one of a number of pre-designed model campaigns for potential clients that address nation-wide epidemics such as alcohol and drug abuse, prescription drug abuse, bullying, and gun safety through their website www.preventioncampaigns.com.

14.     The Dose of Reality Prevention Campaign and the DOSE OF REALITY mark are devised to address the prescription drug epidemic that has plagued and continues to plague a variety of communities across the United States.

### A.      USE AND PUBLICATION OF THE DOSE OF REALITY MARK

15.     PG Creative began using the DOSE OF REALITY mark in commerce on or about May 27, 2014.

16.     PG Creative has used the DOSE OF REALITY mark in commerce continuously since May 27, 2014, in connection with the promotion, offering for sale, and sale of campaigns designed to raise public awareness in combating the prescription drug crisis that plagues the United States. Attached as Exhibit 3 are copies of representative samples of PG Creative's Prevention Campaign materials showing the DOSE OF REALITY mark as used in connection with these services.

17.     Materials from PG Creative's DOSE OF REALITY Prevention Campaigns — including a downloadable campaign sheet with campaign elements and pricing—have been publicly available on the website www.preventioncampaigns.com since at least May 27, 2014.

18.     PG Creative presented the Dose of Reality Prevention Campaign at the Community Anti-Drug Coalitions of America (CADCA) mid-year conference in Orlando, Florida in July of 2014 where PG Creative publicly displayed the DOSE OF REALITY mark on a large display and distributed Prevention Campaign marketing materials displaying the DOSE

OF REALITY mark.  Additionally, PG Creative attended the CADCA National Conference in National Harbor, Maryland, and distributed marketing materials displaying the DOSE OF REALITY mark in February of 2015.   In August of 2015, PG Creative again exhibited at the CADCA mid-year conference in Indianapolis, Indiana, displaying the Dose of Reality mark and distributing catalogs, which displayed the campaign and mark.  PG Creative's attendance and presentation of the Dose of Reality Prevention Campaign at these industry conferences ensured that the relevant audience, *i.e.*, advocacy groups concerned about prescription drug abuse, were aware of the campaign and the DOSE OF REALITY mark and its affiliation with PG Creative.

### B.      SUCCESS OF PG CREATIVE'S DOSE OF REALITY MARK

19.      Over the past several years, PG Creative has successfully sold their prevention campaign services, including the DOSE OF REALITY based Prevention Campaign, to anti-drug councils, drug prevention groups, government agencies, school districts and colleges.  For example, in 2015, the Singing River Services/Mississippi Partnership Project featured the DOSE OF REALITY mark for public display on a billboard as part of its campaign against prescription drug abuse.  Similarly, in 2016, the Life Skills regional Prevention Center in Kentucky included posters, stall signs, and promotional materials displaying the DOSE OF REALITY mark as part of its advocacy to raise the awareness of prescription drug abuse.  In 2017, California University of Pennsylvania included posters and promotional material displaying the DOSE OF REALITY mark as part of its campaign raising awareness of prescription drug abuse and addiction.  And, in 2018, the Florida based coalition, Drug Free Punta Gorda, engaged PG Creative for its DOSE OF REALITY Prevention Campaign.

### C.      DEFENDANTS AND THE DOSE OF REALITY MARK

20.      On March 23, 2015 there was a visit to PG Creative's <preventioncampaign.com> website, including the </portfolio-view/dose-of-reality-campaign/> webpage.  That visit lasted

for one minute and fifteen seconds, including thirty-six seconds specifically on PG Creative's Dose of Reality page.  The network domain used in that visit was registered to the State of Wisconsin's Department of Administration.  Attached as Exhibit 4 is a copy of the Plaintiff's website analytical data showing the webpage viewed, the service provider, identification of those who visited the webpage, and the average time spent on the webpage.

21.     A few weeks later, on May 7, 2015, there was another visit to PG Creative's <preventioncampaign.com> website from a user in the city of Pewaukee, Wisconsin, the home of the Defendants Affirm.  Attached hereto as Exhibit 5 is a copy of the Plaintiff's website analytical data including the city of origin, and acquisition and behavior data of the visiting party.

### D.     CONFUSION RELATING TO THE DOSE OF REALITY MARK

22.     On November 22, 2017, Plaintiff received a phone call from a prospective client at Blue Cross Blue Shield of Arkansas.  Blue Cross Blue Shield of Arkansas had apparently confused PG Creative's DOSE OF REALITY Prevention Campaigns and prevention campaigns offered by the Defendants that copied PG Creative's DOSE OF REALITY mark.

23.     During the CADCA Mid-Year Conference in July of 2018 held in Orlando, Florida, several prospective clients approached PG Creative regarding the DOSE OF REALITY mark-based Prevention Campaign.  Those prospective clients were confused.  They thought that they were contacting the agency that had implemented a public advocacy campaign circulated in Wisconsin which, like PG Creative's campaign used the mark DOSE OF REALITY and, like PG Creative's campaign, was designed to combat prescription drug abuse and addiction.  Their confusion is easy to understand because that campaign in Wisconsin implemented by Affirm was built on the phrase DOSE OF REALITY and the logo used in that campaign bore a strong visual

resemblance to PG Creative's stylized design.  What those visitors to PG Creative's booth did not know, however, was that although PG Creative was and is the creator and owner and first user of the DOSE OF REALITY mark, the Defendants Affirm had, without authority, copied PG Creative's mark and placed it prominently in the anti-prescription drug abuse campaign seen in Wisconsin.

24.     Such confusion has added to mounting uncertainty and confusion in the marketplace over the mark DOSE OF REALITY.  That confusion and uncertainty has led to a diminution of PG Creative's standing and has damaged PG Creative's reputation in the industry. One example of this harm to PG Creative's reputation is shown by the decline in PG Creative's search rankings for the DOSE OF REALITY search term.  On information and belief, the actions of Defendants Affirm have been a proximate cause of that decline in industry reputation.  On information and belief, potential clients have become confused and have come to think that it is PG Creative who has copied its DOSE OF REALITY mark from the Affirm DOSE OF REALITY campaign seen in Wisconsin.   Those potential clients have not understood that it is actually Affirm who had unjustly taken and traded on the creations and work of PG Creative.  On information and belief, prospective clients at the Orlando trade show in 2018 were, like others, confused and likely to be confused as to the affiliation, connection, or association of Defendants' services that implemented DOSE OF REALITY based anti-prescription drug abuse campaigns with those same services offered by the true owner of the DOSE OF REALITY mark, PG Creative.

E.     **THE VALUE, USE AND DISTINCTIVENESS OF THE DOSE OF REALITY MARK**

25.     As a result not just of its registration, but its widespread and continuous and exclusive rightful use of the DOSE OF REALITY mark to identify its services, PG Creative

owns valid and subsisting federal statutory and common law rights in and to the DOSE OF REALITY mark.

26.     Plaintiff's DOSE OF REALITY mark is distinctive to both the consuming public and within the drug abuse prevention public advocacy trade and advertising channels.

27.     PG Creative has expended substantial time, money, and resources marketing, advertising, and promoting its DOSE OF REALITY Prevention Campaigns to raise public awareness of prescription drug abuse and addiction.  PG Creative has done this through national conferences, email campaigns, search engine optimization, and "pay-per-click" campaigns through Google, Bing, and Yahoo, and targeted brochure mailings.  From 2014 to the present, PG Creative has expended thousands of dollars on marketing, advertising, and promotion of their Prevention Campaign-related services sold under the DOSE OF REALITY mark.

28.     The services PG Creative offers under the DOSE OF REALITY mark are of high quality and have garnered national recognition as a result of public awareness, marketing, and advertising efforts.

29.     As a result of PG Creative's expenditures, efforts, and creations, the DOSE OF REALITY mark has come to signify a high quality of services designated by the DOSE OF REALITY mark and those services have acquired incalculable distinction, reputation, and goodwill belonging exclusively to PG Creative.

II.     **DEFENDANTS' UNLAWFUL ACTIVITIES**

30.     On information and belief, Defendants Affirm sell their services to implement and distribute public awareness campaigns built on the counterfeit mark DOSE OF REALITY copied from PG Creative.  Just as are PG Creative's public campaigns created to raise awareness of the dangers of prescription drug abuse, so too are those implemented by Defendants Affirm.  The principal difference, however, is that the campaigns implemented by Defendants Affirm are built

around the DOSE OF REALITY mark copied from PG Creative.  Those campaigns and materials which include and prominently rely upon PG Creative's mark DOSE OF REALITY are, on information and belief, implemented for a variety of states and agencies.

31.    Early in 2015, Defendants Affirm were selected by Wisconsin's Department of Justice and the Wisconsin Division of Mental Health and Substance Abuse Services to plan and execute Wisconsin's prescription drug abuse awareness campaign (hereinafter, the "Wisconsin Campaign").   On information and belief, the name and logo development process for this campaign occurred during the timeframe of February 2015 to June 2015.  On information and belief, the Defendants as well as people working for the state of Wisconsin were fully aware of PG Creative's existing use and ownership of the DOSE OF REALITY mark during this time period.

32.    Upon information and belief, on or about September 24, 2014, persons from the Wisconsin Division of Mental Health and Substance Abuse Services and the Wisconsin Prevention Committee of the State Council of Alcohol and Other Drug Abuse (collectively "Wisconsin State Council"), received Plaintiff's email marketing campaign through which PG Creative offered its Prevention Campaign marketing materials based on PG Creative's DOSE OF REALITY mark.

33.    In particular, one email sent to a Wisconsin State Council Committee Member was opened on at least 11 different occasions from September 29, 2014, to October 21, 2014. This email from PG Creative showed PG Creative's DOSE OF REALITY mark-based campaign and went specifically to PG Creative's Prescription Drugs campaign page which showed a preview of the DOSE OF REALITY campaign belonging to PG Creative.

34.     Upon information and belief, a staff member from the Wisconsin Division of Mental Health and Substance Abuse Services was on the attendee list for the CADCA conference in February 2015 in National Harbor, MD where PG Creative exhibited its DOSE OF REALITY prescription drug abuse prevention campaign.

35.     Upon information and belief, the State of Wisconsin has compensated and is compensating Defendants Affirm through a multimillion-dollar federal grant to develop, market, and promote and distribute in Wisconsin a Prevention Campaign that Affirm centered around the mark DOSE OF REALITY they copied from PG Creative.   That campaign was officially launched in September 2015.

36.     Further, on information and belief, instead of engaging in reasonable commercial diligence to explore ownership of a mark that they knew did not belong to or arise with them, Defendants Affirm implemented what here is called "The Wisconsin Campaign"  which displayed the mark copied from PG Creative, and prominently used the counterfeit mark "DOSE OF REALITY" in a stylized font similar to that used by PG Creative in its campaign.  The campaign built by Defendants Affirm included the outline of Wisconsin layered under the copied DOSE OF REALTY mark (hereinafter, "Wisconsin Infringing Mark").

37.     On information and belief, the state of Wisconsin has compensated and still is compensating Defendants Affirm well for the Wisconsin Campaign.   On their website, Defendants Affirm point to their work on the Wisconsin Campaign for others to see the creativity of their work.  Of course, what they do not say is that they did not create and do not own the DOSE OF REALITY mark and had and have no rights to use that mark.   On information and belief, Defendants Affirm have placed the Wisconsin Campaign in print and outdoor media, as well as radio and TV spots, brochures and on their website

www.affirmagency.com.  Despite it being based on a stolen mark, the Defendants Affirm have also entered the Wisconsin Campaign in advertising award competitions, including the ADDY Awards.  Affirm has gone on to publicize their subsequent awards despite knowing that the DOSE OF REALITY mark which is the pillar of the Wisconsin Campaign is not their work and not their property.

38.     As a result of the popularity and success of the Wisconsin Campaign, on information and belief, state agencies for the states of Maine, Minnesota, Nebraska, and more recently Georgia and Arkansas have engaged Defendants Affirm for the creation, implementation and placement of their respective campaigns directed to the advocacy of public awareness of prescription drug abuse and addiction that use and are built around the DOSE OF REALITY mark copied from PG Creative.

39.     On or about February 16, 2017, Defendants Affirm announced on their website that they had created similar campaigns based on the counterfeit mark DOSE OF REALITY for the state governments of Maine (www.doseofrealitymaine.org), Minnesota (www.doseofreality.mn.gov), and Nebraska (www.doseofreality.mn.gov).  Each of the websites of those states displays the copied DOSE OF REALITY with the outline of the respective state layered beneath the central part of the mark.

40.     As used by Defendants Affirm, the copied DOSE OF REALITY mark is identical in commercial impression with PG Creative's authentic DOSE OF REALITY mark.  In attached Exhibit 6, PG Creative's DOSE OF REALITY mark, as used by PG Creative and the mark as copied by Defendants Affirm, are vertically aligned with PG Creative's legitimate DOSE OF REALITY mark superimposed on the counterfeit mark as used by Defendants Affirm.

41.     Upon information and belief, Defendants have been engaged in the offering for sale and sale of their services in implementation and distribution of public awareness of prescription drug abuse and addiction prevention campaigns based on the DOSE OF REALITY mark they took from PG Creative.  Those services are premised on and rely upon Defendants' copied version of PG Creative's DOSE OF REALITY mark wrongly purloined from PG Creative.  Attached as Exhibit 7 are true and correct photographic reproductions of advertising and promotional marketing material of Defendants Affirm showing Defendants' use and copying of PG Creative's mark.

42.     The services offered by Defendants Affirm built around the counterfeit mark DOSE OF REALITY are directed toward the same careful and sophisticated purchasers of such services to whom PG Creative markets its DOSE OF REALTY Prevention Campaigns.

43.     Upon information and belief, Defendants have offered and sold their services to implement and distribute prescription drug abuse prevention campaigns built around the copied DOSE OF REALITY mark belonging to PG Creative and have publicized those services on the Internet and announced those services on press releases available nationwide.

44.     Defendants' infringing acts have caused actual confusion and are likely to cause further confusion, mistake, and deception amongst the relevant consuming public as to the source or origin of the Defendants' services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' services originate from, are associated or affiliated with, or otherwise authorized by Plaintiff PG Creative.

45.     Defendants' infringing acts as alleged herein have resulted in actual confusion.

46.     Upon information and belief, several states have awarded lucrative contracts to Defendants Affirm to develop, market and promote and distribute public anti-prescription drug abuse campaigns built upon the DOSE OF REALITY mark stolen from PG Creative.

47.     Upon information and belief, Defendants' acts are willful and have been taken with the deliberate intent to not only copy the mark that does not belong to them but to trade on the goodwill of PG Creative's DOSE OF REALITY mark, thus causing confusion and deception in the marketplace, divert potential sales of Plaintiff's services to the Defendants Affirm while unjustly enriching the Defendants and illegitimately expanding their business and acclaim.

48.     Defendants acts have further harmed the reputation and standing of PG Creative and are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to PG Creative and to its valuable reputation and goodwill with the relevant consuming public for which Plaintiff has no adequate remedy at law.

## COUNT ONE
## Trademark Infringement

49.     Plaintiff repeats and realleges paragraphs 1 through 48 hereof, as if fully set forth herein.

50.     Defendants' unauthorized use in commerce of the copied DOSE OF REALITY mark as alleged here is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by PG Creative.  Defendants' conduct, therefore, constitutes service mark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

51.     Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of PG Creative's prior rights in the DOSE OF REALITY mark and with the willful intent to cause confusion and trade on Plaintiff's goodwill and the goodwill implicit in PG Creative's mark DOSE OF REALITY.

52.     Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

53.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, statutory damages, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT TWO
### Federal Unfair Competition

54.     Plaintiff PG Creative repeats and realleges paragraphs 1 through 53 hereof, as if fully set forth herein.

55.     Defendants' unauthorized use in commerce of the copied DOSE OF REALITY mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

56.     Defendants' unauthorized use in commerce of the copied DOSE OF REALITY mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

57.     Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

58.     Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

59.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

60.     Defendants' acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act, and have already caused Plaintiff irreparable damage and will, unless enjoined, continue to so damage Plaintiff, which has no adequate remedy at law.

61.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, statutory damages, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT THREE

### Florida's Deceptive And Unfair Trade Practices Act
### FLA. STAT. § 501.201 et seq.

62.     Plaintiff repeats and realleges paragraphs 1 through 61 hereof, as if fully set forth herein.

63.     As described above, Defendants have engaged in and are engaged in unfair trade practices by representing to consumers that their products have a source, nature, and quality that they do not have.

64.     Defendants have engaged in and are engaged in false and misleading representations and omissions of material fact to consumers and have engaged in deceptive conduct.

65.     Defendants' false and misleading representations and deceptive conduct are material and have caused and are likely to cause prospective consumers of the Plaintiffs' products to be deceived as to the identity of the person to whom rights belong and as to the level of quality of the product.

66.     Defendants have disparaged the goods and services and business of PG Creative through false and misleading representations of material facts.

67.     By reasons of belief, the Defendants Affirm have provided knowingly false and misleading representations of fact and conduct in violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq.

68.     As a direct and proximate result of that misleading and deceptive conduct, the Plaintiffs, as well as consumers, have sustained and are likely to continue to sustain damages. Plaintiffs have no adequate remedy at law.

## COUNT FOUR
## Common Law Trademark Infringement

69.     Plaintiff repeats and realleges paragraphs 1 through 68 hereof as if fully set out herein.

70.     Plaintiff PG Creative has continuously used the DOSE OF REALITY mark in commerce since at least May 27, 2014.

71.     Plaintiff PG Creative has used its mark across the nation, disseminating its services and offer for services under the DOSE OF REALITY mark at trade shows in Florida, Maryland and Georgia attended by potential customers and consumers from across the nation. Additionally, PG Creative has broadcast its services available under the DOSE OF REALITY mark to a nationwide audience using the Internet.

72.     Defendants are intentionally and wrongfully using unauthorized reproductions, counterfeits, copies and colorable imitations of PG Creative's DOSE OF REALITY mark in commerce on public advocacy campaigns that promote public awareness of prescription drug abuse and addiction. Defendants' intentional and wrongful use of these unauthorized reproductions, counterfeits, copies and colorable imitations further result in false designations of origin, false and misleading descriptions of fact, as well as false and misleading representations of fact that have caused confusion, are likely to cause confusion, to cause mistake, to deceive as to the affiliation, connection, or association of Defendants with PG Creative and as to the origin, sponsorship, or approval of Defendants' campaigns and commercial activities by PG Creative in violation of the common law rights of PG Creative.

73.     Defendants' acts have caused irreparable injury to PG Creative's goodwill and reputation which is ongoing and irreparable.

74.     Defendants' acts have caused the relevant consuming public to believe wrongly that PG Creative is not the owner of the DOSE OF REALITY mark.

75.     Defendants' sales and marketing of thier campaigns that wrongly use the counterfeit mark will likely continue unless enjoined by this Court.

76.     PG Creative is entitled to a permanent injunction against Defendants as well as all other remedies available under the common law.

77.     As award of monetary damages alone cannot fully compensate PG Creative for its injuries and PG Creative lacks a fully adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment against Defendants finding and ordering as follows:

1.      That Defendants have violated Section 32 of the Lanham Act (15 U.S.C. § 1114; and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); and Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

2.      That Defendants have violated Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*.

3.      That Defendants have violated the common law trademark rights of the Plaintiff.

4.      That Defendants shall in three sequential issues of three prominent trade journals chosen by the Plaintiff and shall, on a webpage indexed to the first or entry page of Defendants' website for a period of 12 months from the date of this Order, cause a correction to be published that shall state in clear, plain and prominent Times Roman or Ariel text covering at least 20% of the page upon which it appears the following statement:

**Affirm Agency is NOT the Creator or Owner of the Mark**

**DOSE OF REALITY**

**The PG Creative agency of Miami Florida Created and Owns the Mark**

**DOSE OF REALITY**

5.      Granting an injunction permanently enjoining the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order from:

(a)      manufacturing, distributing, selling, marketing, advertising, promoting, implementing or authorizing any third party to manufacture, distribute, sell, market, advertise, disseminate or promote directly or indirectly Defendants' services bearing the mark DOSE OF REALITY or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's DOSE OF REALITY mark;

(b)      engaging in any activity that infringes Plaintiff's rights in its DOSE OF REALITY mark;

(c)      engaging in any activity constituting unfair competition with Plaintiff;

(d)      making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendants' services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or (ii) Plaintiff's services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendants;

(e)      using or authorizing any third party to use in connection with any business, goods or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

(f)    registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the DOSE OF REALITY infringing mark or any other mark that infringes or is likely to be confused with Plaintiff's DOSE OF REALITY mark, or any goods or services of Plaintiff, or Plaintiff as their source;

(g)    and

(h)    aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (f).

6.    Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's services.

7.    Directing Defendants to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the DOSE OF REALITY infringing mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's DOSE OF REALITY mark, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendants' goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering

for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing the DOSE OF REALITY infringing mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiff's DOSE OF REALITY mark, and to immediately remove them from public access and view.

8.      Directing that Defendants recall and deliver up for destruction all goods, packaging, marketing material, advertisements, promotions, signs, displays, and related materials incorporating or bearing the DOSE OF REALITY infringing mark or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiff's DOSE OF REALITY mark.

9.      Directing Defendants to formally abandon with prejudice any and all of their applications to register the DOSE OF REALITY infringing mark or any mark consisting of, incorporating, or containing Plaintiff's DOSE OF REALITY mark or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark registry.

10.     Directing Defendants to cancel with prejudice any and all of their registrations for the DOSE OF REALITY infringing mark or any mark consisting of, incorporating or containing Plaintiff's DOSE OF REALITY mark or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark registry.

11.     Ordering Defendants in accordance with 15 U.S.C. § 1116(a), be directed to file with this court and serve upon PG Creative's within thirty (30) days after service of the permanent injunction a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the permanent injunction.

12.     Ordering Defendants to deliver an accounting to Plaintiffs within thirty (30) days of the entry of judgement.

13.     Awarding Plaintiff an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

14.     Directing that Defendants account to and pay over to Plaintiff all profits realized by their wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

15.     Awarding Plaintiff punitive and exemplary damages as the court finds appropriate to deter any future willful infringement.

16.     Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

17.     Awarding Plaintiff interest, including prejudgment and post-judgment interest on the foregoing sums.

18.     Awarding such other and further relief as the Court deems just and proper.

Dated:   December 17, 2018     Respectfully Submitted,

By: /s/ Andrew S. Rapacke

Andrew S. Rapacke, Esquire
**THE RAPACKE LAW GROUP, P.A.**
**Florida Bar No: 0116247**
1836 N. Pine Island Road
Plantation, FL 33322
Telephone: (954) 951-0154
Facsimile: (954) 206-0484
Email: andy@arapackelaw.com

J. Scott Denko *(Pro Hac Vice)*
State Bar No. 00792457
denko@dcllegal.com
John M. Bustamante *(Pro Hac Vice)*
State Bar No. 24040618
bustamante@dcllegal.com
**DENKO & BUSTAMANTE LLP**
114 W. 7th St., Suite 1100
Austin, Texas 78701
Telephone: (512) 906-2074
Facsimile: (512) 906-2075

**ATTORNEYS FOR PLAINTIFF**
**P G CREATIVE, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 17, 2018, under Federal Rule of Civil Procedure 5, the foregoing motion was filed with the Clerk of the Court by using the CM/ECF system, which will send an electronic notice to the following lead counsel of record in this proceeding:

**Chadwick M Layton**
Harvey Waddell Layton PA
101 North J Street
SUITE 1
Lake Worth, FL 33460
(561)585-4631
Fax: (561)585-1317
Email: cmlayton@hwml-law.com

**Jake Mayer Goodman**
Cole, Scott , Kissane, P.A.
222 Lakeview Avenue
Suite 120
West Palm Beach, FL 33401
561-383-9200
Fax: 561-683-8977
Email: jake.goodman@csklegal.com

**Justin B. Levine**
Cole, Scott and Kissane
222 Lakeview Avenue
Suite 120
West Palm Beach, FL 33401
561-383-9200
Fax: 561 683-8977
Email: justin.levine@csklegal.com

**Elijah B. Van Camp**
Dewitt Ross & Stevens, SC
Two East Mifflin Street
Suite 600
Madison, WI 53703
(608) 255-8891
Email: evc@dewittross.com

**Harry E. Van Camp**
DeWitt Ross & Stevens SC
Two E Mifflin Street
Suite 600
Madison, WI 53703-2865
608-255-8891
Fax: 608-252-9243
Email: hvc@dewittross.com

By: /s/ Andrew S. Rapacke
Florida Bar No. 0116247