UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-24299-GAYLES/OTAZO-REYES

PG CREATIVE INC.,
a Florida Corporation,

                    Plaintiff,

v.

AFFIRM AGENCY, LLC, a Wisconsin Limited Liability
Company, and STAPLES MARKETING, LLC,
a Wisconsin Limited Liability Company,

                    Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendants' Motion to Dismiss for Lack of

Personal Jurisdiction (the "Motion") [ECF No. 37]. The Court has reviewed the Motion and the

record and is otherwise fully advised. For the reasons that follow, the Motion is granted.

## I.   BACKGROUND

### A.  Factual[1]

In 2014, Plaintiff PG Creative Inc., an advertising agency, introduced its "Dose of Reality

Prevention Campaign," which was devised to address the nation's prescription drug epidemic.

*See* Second Amended Complaint (the "Complaint") ¶ 14, [ECF No. 32]. The campaign includes

marketing materials, such as pamphlets, bumper stickers, and flyers, which heavily feature the

---

[1] Because Defendants challenge the Court's personal jurisdiction over them, Plaintiff's alleged
jurisdictional facts are taken as true only "to the extent they are uncontroverted by [D]efendants'
affidavits." *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir.
1988). Defendants have submitted an affidavit from Defendant Affirm Agency's President,
Daniel Mager (the "Mager Affidavit"), challenging various facts related to jurisdiction. [ECF
No. 46-1]. As such, the Court distinguishes in its description of the facts between facts taken as
true and facts alleged.

"Dose of Reality" mark (the "Mark). [ECF No. 32-3]. The Mark includes the words "Dose of Reality" in a stylized font. Compl. ¶ 13. Since 2014, Plaintiff has advertised the Mark on its website, www.preventioncampaigns.com. *Id.* ¶ 18.

In 2015, Defendants Affirm Agency, LLC, and Staples Marketing, LLC, d/b/a Affirm (collectively the "Defendants"[2]) designed a campaign against prescription drug abuse for the State of Wisconsin (the "Wisconsin Campaign"). *Id.* ¶ 32. Defendants use the Mark in the Wisconsin Campaign. *Id.* ¶ 36. Plaintiff claims that Defendants were fully aware that Plaintiff owned the Mark when they intentionally copied it for the Wisconsin Campaign. *Id.* ¶ 32. In support of its claim, Plaintiff asserts that "a user in the city of Pewaukee, Wisconsin, the home of Defendants" visited Plaintiff's website on May 7, 2015, four months before the Wisconsin Campaign launched. *Id.* ¶ 22.

Since the Wisconsin Campaign, Defendants have also helped other states launch similar campaigns featuring the Mark. *Id.* ¶ 50. In March 2019, the Florida Attorney General's Office (the "Attorney General") asked Defendants about implementing the Wisconsin Campaign in Florida. [ECF No. 37 at 5].[3] Defendants relayed the Attorney General's interest to the State of Wisconsin, and the State of Wisconsin approved the Attorney General's use. [ECF No. 37 at 10–11]. Ultimately, the Attorney General did not move forward with the project, and Defendants never transmitted any files to Florida. [ECF No. 46-1 at ¶ 4].

Plaintiff claims Defendants' use of the Mark has caused, and will continue to cause, confusion among Plaintiff's potential clients as to who owns the Mark. Compl. ¶ 76. Specifically,

---

[2] Though Defendants argue Affirm Agency, LLC, is a shell company, and thus should not be included in this action, [ECF No. 37 at 3], the Court references both Defendants here since Plaintiff maintains the action against both.
[3] Since Plaintiff does not allege when Defendants' contacts with the Attorney General began, the Court employs Defendants' uncontroverted timeline outlined in their Motion.

Plaintiff alleges Defendants' actions caused Plaintiff's search rankings[4] for the "Dose of Reality" search term to decline and caused prospective clients—including several at a 2018 Orlando, Florida trade show—to believe Plaintiff had copied Defendants' Wisconsin Campaign. *Id.* ¶¶ 23–25. Plaintiff asserts that this confusion has caused and continues to cause immediate irreparable harm to Plaintiff's reputation and goodwill in the marketplace. *Id.* ¶ 52.

### B. **Procedural**

On October 17, 2018, Plaintiff filed its Complaint against Defendant Affirm Agency, LLC, bringing four counts sounding in trademark infringement. [ECF No. 1]. Plaintiff soon after filed its First Amended Complaint, adding Defendant Staples Marketing, LLC, d/b/a Affirm. [ECF No. 20]. On December 21, 2018, Defendants filed their first Motion to Dismiss [ECF No. 24], and on April 19, 2019, they filed a related Notice of New Facts ("Notice") [ECF No. 29].

On May 7, 2019, Plaintiff filed its Second Amended Complaint against Defendants, incorporating the facts asserted in Defendants' Notice and alleging claims for: (1) service mark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (2) unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) false and misleading representations of fact in violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*; and (4) common law trademark infringement. Compl. ¶¶ 54, 62, 71, 76–81.

On May 20, 2019, Defendants moved to dismiss based on: (1) lack of personal jurisdiction and improper venue; (2) failure to join an indispensable party; and (3) sovereign immunity. [ECF No. 37]. In the alternative, Defendants request that the Court transfer the case, pursuant to 28

---

[4] A search ranking is the position at which a website appears in the results of a search engine query. The higher a website is ranked, the more likely that website is to attract more visitors.

U.S.C. § 1404(a) or 28 U.S.C. § 1406(a), to the United States District Court for the Eastern District of Wisconsin. *Id.* As the Court finds that it has no personal jurisdiction over Defendants, it need not address Defendants' additional bases for dismissal or transfer.

## II.   LEGAL STANDARD

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). Plaintiffs must "properly plead[] facts pertinent to the conduct and activities of the defendant in the forum state[.]" *Borislow v. Canaccord Genuity Group Inc., et al.*, No. 14-cv-80134, 2014 WL 12580259, at *5 (S.D. Fla. June 27, 2014) (internal quotation marks omitted) (quoting *Elmex Corp. v. Atl. Fed. Savings & Loan Ass'n of Ft. Lauderdale*, 325 So. 2d 58, 61 (Fla. 4th DCA 1976)); *see Mcgee v. Cook*, No. 8:09-CV-2543-T-27TGW, 2011 WL 1365024, at *5 (M.D. Fla. Apr. 11, 2011) (holding personal jurisdiction insufficiently pled where complaint contained "insufficient specific allegations" of defendants' "business activities in Florida, their liens on Florida property, or their contracts to provide insurance in Florida").

"[T]he facts as alleged in the complaint are taken as true to the extent they are uncontroverted by defendants' affidavits." *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990) (citation omitted). But when a defendant submits evidence sufficiently challenging personal jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *United Techs. Corp.*, 556 F.3d at 1274 (quoting *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)). Then, the plaintiff must "affirmatively support its jurisdictional allegations and may not merely rely upon the factual

allegations set forth in its complaint." *Kernel Records Oy v. Mosley*, No. 09-21597-CIV-TORRES, 2010 WL 2812565, at *3 (S.D. Fla. July 5, 2010) (citation omitted). It is only where parties' supplemental evidence—for example, affidavits and depositions—conflict that courts must construe all reasonable inferences in favor of the plaintiff. *See Morris v. SSE, Inc*., 843 F.2d 489, 492 (11th Cir. 1988).

In analyzing a motion to dismiss for lack of personal jurisdiction, the Court first determines "whether the applicable statute potentially confers jurisdiction over the defendant," and then determines "whether the exercise of jurisdiction comports with due process." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A*., 119 F.3d 935, 942 (11th Cir. 1997) (citation omitted). When, as here, "jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs [courts] to look to the state long-arm statute in order to determine the existence of personal jurisdiction." *Sculptchair, Inc. v. Century Arts, Ltd*., 94 F.3d 623, 626–27 (11th Cir. 1996). As a result, the Court first looks to Florida's long-arm statute, which may be satisfied through either general or specific jurisdiction. *See Dohler S.A. v. Guru*, No. 16-23137-CIV, 2017 WL 4621098, at *3–4 (S.D. Fla. Oct. 16, 2017) (analyzing both).

As Plaintiff argues the Court has specific jurisdiction over Defendants [ECF No. 45 at 22], the Court declines to address general jurisdiction. Specific jurisdiction "authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Louis Vuitton*, 736 F.3d at 1352. If Plaintiff establishes specific jurisdiction exists, the Court must then determine whether personal jurisdiction over Defendants violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* at 1350. That

is, whether the defendant has such minimum contacts with the forum so that exercising personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.* at 1355.

## III.   DISCUSSION

The Court may only exercise jurisdiction over Defendants if both Florida law and the U.S. Constitution permit. *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (citation omitted). For the reasons discussed below, the Court finds that it has jurisdiction over Defendants under Florida law, but that the Court's exercise of jurisdiction over Defendants would not comport with the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

### A.   **Florida Long-Arm Statute**

Florida's long-arm statute provides in pertinent part:

> (1) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself ... to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> ...
>
> (b) Committing a tortious act in this state.
>
> ...

Fla. Stat. § 48.193(1)(b).

Plaintiff alleges that the Court has jurisdiction over Defendants under Florida's long-arm statute "as a result of Defendants' *actions within the forum* tortuously harming the Plaintiff, its reputation and its property." Compl. ¶ 8 (emphasis added). As set forth below, Plaintiff has not established that Defendants committed a tortious act within Florida. However, the Court finds that

Florida's "long-arm" reaches Defendants because Defendants' out-of-state conduct caused harm in the forum. The Court addresses both bases in turn.

First, Defendants have not committed a tortious act in this state. The only act Plaintiff alleges Defendants committed *within* Florida is Defendants being "in the process of implementing an opioid abuse prevention program" with the Attorney General. [ECF No. 45 at 18]. The Court finds this "process" insufficient to prove a "tortious act in this state." Fla. Stat. § 48.193(1)(b). The following contacts between Defendants and the Attorney General are undisputed: (1) the Attorney General contacted Defendants to state its interest in using the Wisconsin Campaign in Florida[5]; (2) Defendants relayed the Attorney General's interest to the State of Wisconsin; and (3) the State of Wisconsin approved the Attorney General's use of the Wisconsin Campaign. [ECF No. 37 at 10–11]. Plaintiff alleges, without evidence, that Defendants have "agree[d] to perform work" for the Attorney General. [ECF No. 45 at 6]. But Defendants' Mager Affidavit makes clear that the Attorney General ultimately declined to use the Wisconsin Campaign and that Defendants never transmitted the Mark to the Attorney General. [ECF No. 46-1 at ¶ 4]. And because Plaintiff has failed to produce counter evidence, the Court takes Defendants' assertions as true. *See United Techs. Corp.*, 556 F.3d at 1274 (declining to consider plaintiff's allegations about a defendant's Florida conduct because plaintiff "failed to rebut with competent evidence" defendant's affidavit specifically denying those allegations). Defendants' sporadic conversations with the Attorney General do not alone constitute tortious conduct occurring within the forum.

The Court does, however, find Florida's long-arm statue is satisfied through Defendants' out-of-state tortious acts harming Plaintiff in Florida. Indeed, Florida's long-arm "appl[ies] to

---

[5] Plaintiff does not dispute Defendants' assertion that the Attorney General initiated contact with Defendants. [ECF No. 37 at 5].

defendants committing tortious acts outside the state that cause injury in Florida." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999) ("Absent a contrary decision by [the Florida Supreme Court], we are bound in this case to follow this court's firmly established precedent, which interprets subsection (1)(b) to apply to defendants committing tortious acts outside the state that cause injury in Florida."). It is well settled in the Eleventh Circuit that trademark claims under the Lanham Act allege tortious acts for long-arm purposes, *Louis Vuitton*, 736 F.3d at 1353, and that out-of-state infringement causing injury in Florida satisfies the statute, *Licciardello*, 544 F.3d at 1283; *see Honus Wagner Co. v. Luminary Group LLC*, No. 17-CV-61317, 2017 WL 6547899, at *8 (S.D. Fla. Dec. 21, 2017) (collecting cases finding long-arm jurisdiction for tortious out-of-state conduct that caused in-state harm).

Here, Plaintiff claims Defendants committed the tort of trademark infringement under the Lanham Act. Plaintiff asserts that Defendants' unauthorized use of the Mark harmed Plaintiff's reputation in the marketplace by causing confusion about who owns the Mark and by causing prospective clients to mistakenly believe Plaintiff stole the Mark from Defendants' Wisconsin Campaign. Since Plaintiff is a Florida corporation with its principal place of business in Miami, Florida, Plaintiff would most likely feel this reputational harm in Florida.[6] Accordingly, the Court finds that Florida's long-arm statute reaches Defendants.

**B. Due Process under the Fourteenth Amendment of the U.S. Constitution**

Though the Court finds Florida's long-arm statute is satisfied, Plaintiff nonetheless fails to establish that jurisdiction over Defendants comports with the Due Process Clause of the Fourteenth

---

[6] Because the Court finds Plaintiff's alleged reputational harm sufficient here, it only briefly notes that Plaintiff's claim that injury in a trademark infringement case is "deemed to take place where the trademark owners resides," [ECF No. 45 at 19], is far from a foregone conclusion in this circuit. *See Licciardello*, 544 F.3d at 1283 ("We need not decide whether trademark injury necessarily occurs where the owner of the mark resides, as the Florida district courts have held, . . . .").

Amendment. "The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citation omitted).

"In specific personal jurisdiction cases, we apply the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts within the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Dohler*, 2017 WL 4621098, at *5 (quoting *Louis Vuitton*, 736 F.3d at 1355). The Court addresses each prong below.

### 1.   "Arising Out of" or Relatedness

To establish relatedness, plaintiffs must at a minimum demonstrate the defendant had "some contact with the forum state and that the contact was a but-for cause of the alleged tort." *USA Mgmt. Group, LLC v. Fitness Publications, Inc*., No. 14-22477-CIV, 2015 WL 11233075, at *3 (S.D. Fla. Mar. 4, 2015) (quoting *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010)). That is, the alleged tort must arise out of contacts that the "defendant himself" creates with the forum. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King*, 471 U.S. at 475). This is because due process "principally protect[s] the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* The Court's assessment must therefore focus on to what extent the defendant's activities in the forum state are affiliated with the underlying controversy. *Waite v. All Acquisition Corp*., 901 F.3d 1307, 1314 (11th Cir. 2018), *cert. denied sub nom. Waite v. Union Carbide Corp*., 139 S. Ct. 1384 (2019) (citation omitted).

Plaintiff focuses its claim that jurisdiction comports with due process on one contact: Defendants visiting Plaintiff's website. [ECF No. 45 at 17–20]. Though this act would demonstrate contact between Plaintiff and Defendants, it says nothing about Defendants contact with the *forum*. It is undisputed that Defendants conduct no Florida business, have no Florida offices, have no Florida property, and have no Florida clients. [ECF No. 37 at 10]. That Plaintiff happens to be a Florida company is wholly deficient evidence of Defendants' contacts with Florida. To be sure, the Supreme Court has rejected other plaintiffs' attempts to satisfy this prong based on their own contacts—rather than the defendants' contacts—with the forum. *E.g.*, *Walden*, 571 U.S. at 284 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."). In sum, that Plaintiff is a Florida company does not give Defendants "fair warning" that using the Mark would subject them to jurisdiction in Florida courts. *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1223 (11th Cir. 2009) (citation omitted) (noting that "the causal nexus between the tortious conduct and the purposeful contact" must give a defendant "fair warning").

To the extent Plaintiff argues this prong is satisfied through Defendants' discussions with the Attorney General, the Court disagrees. Defendants' limited contacts with the Attorney General (1) do not demonstrate contact with the *forum*; (2) are not contacts that Defendants themselves created, *see Walden*, 571 U.S. at 284; and (3) are not alleged by Plaintiff to be the but-for cause of Defendants' infringement, *see USA Mgmt. Group, LLC*, 2015 WL 11233075, at *3.

Accordingly, Plaintiff has failed to satisfy the first prong of the due process analysis.

### 2. Purposeful Availment

Even if Defendants had contacts with the forum related to Plaintiff's claims, Plaintiff has failed to prove that Defendants have purposefully availed themselves "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1363 (11th Cir. 2006) (citation omitted). "The heart of this protection is fair warning—the Due Process Clause requires that the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010) (quoting *Burger King*, 471 U.S. at 474) (internal quotations omitted).  In intentional tort cases, courts have used the "effects test" to determine whether purposeful availment exists.[7] *Louis Vuitton*, 736 F.3d at 1356–57; *see Calder v. Jones*, 465 U.S. 783, 788–90 (1984) (providing authoritative statement for effects test doctrine). To satisfy the effects test, the defendant's tort must have: "(1) [been] intentional; (2) [been] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello*, 544 F.3d at 1286. "Under the effects test, a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Louis Vuitton*, 736 F.3d at 1356 (internal

---

[7] The Eleventh Circuit has made clear that courts may apply either the effects test or the minimum contacts test to determine whether purposeful availment occurred in intentional tort cases. *Louis Vuitton*, 736 F.3d at 1356. Accordingly, the Court only examines Defendants' contacts under the effects test. However, the Court also briefly notes that purposeful availment has not occurred under the minimum contacts test. Under the minimum contacts test, courts must assess the nonresident defendant's contacts with the forum state and "ask whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Id.* at 1357. As discussed below, the Court finds Defendants did not have any meaningful contacts with Florida so to reasonably expect being haled into Florida courts.

quotation marks omitted). But due process still requires that the act "create[s] a substantial connection with the forum." *Burger King*, 471 U.S. at 475 n.18 (internal quotation marks omitted). And the Supreme Court has "made clear that mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 278. To prove purposeful availment, a plaintiff must prove a defendant's actions demonstrate his "own affiliation with the State" rather than "the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286 (internal quotation marks omitted).

Here, Plaintiff sufficiently alleges Defendants committed the intentional tort of trademark infringement but fails to satisfy the effects test's remaining prongs. The Court finds unpersuasive Plaintiff's unsupported claims that Defendants' out-of-state viewing and use of the Mark "was aimed at Florida," is a "purposeful availment of the privilege of doing business in Florida," and are actions that Defendants "should quite clearly expect [will cause them to] be sued in Florida, the state from which they stole the Mark." [ECF No. 45 at 19]. Though Plaintiff's allegations are generally taken as true at this stage, such "conclusory allegations in the complaint are not entitled to assumptions of truth[.]" *Formula LLC v. RSUI Indem. Co.*, No. 09-60592-CIV, 2009 WL 2342455, at *1 (S.D. Fla. July 28, 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009)).

Notably absent from Plaintiff's Complaint are allegations that Defendants ever knew Plaintiff was a Florida company. *See Licciardello*, 544 F.3d at 1287–88 (finding effects test satisfied where unauthorized use of plaintiff's mark "individually targeted" plaintiff, who defendant knew was a Florida resident); *see also Elite Flower Servs., Inc. v. Elite Floral & Produce*, LLC, No. 13-CV-21212-UU, 2013 WL 12095134, at *4 (S.D. Fla. June 18, 2013) (defendant knew plaintiff was Florida entity); *see also Pelc v. Nowak*, No. 8:11-CV-79-T-17TGW, 2011 WL 4481571, at *4 (M.D. Fla. Sept. 27, 2011) (defendant knew plaintiff lived and had

business offices in Florida). In fact, Plaintiff admits that Defendants entirely failed to explore the Mark's ownership. Compl. ¶ 37. Certainly, liberally construing Plaintiff's Complaint yields it true that if Defendants visited Plaintiff's website, they may have discovered Plaintiff was a Florida company. But that Defendants "*could* have anticipated that [they] might be haled into court in Florida" does not mean Defendants "*should* have reasonably anticipated" the same. *See Omega IM Group, LLC, v. Louidar, LLC*, No. 17-22141-CIV, 2018 WL 1069446, at *13 (S.D. Fla. Feb. 16, 2018), *report and recommendation adopted*, No. 17-22141-CIV, 2018 WL 1875835 (S.D. Fla. Mar. 6, 2018) (finding no purposeful availment where parties' forum selection clause contemplated Florida action) (emphasis in original).

Moreover, Defendants' Mager Affidavit asserts that before Plaintiff initiated this lawsuit, Defendants had not visited Plaintiff's website and were unaware Plaintiff was based in Florida. [ECF No. 37-1 at ¶¶ 36–38]. Plaintiff argues the Court should nonetheless "give greater weight to the plaintiff's version of the jurisdictional facts[.]" [ECF No. 45 at 22]. That demand is inconsistent with the law: the Court must only give greater weight to the Plaintiff's version "[w]hen affidavits conflict . . . ." *Home Ins. Co.*, 896 F.2d at 1355; *see also Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (citation omitted) (noting that upon a defendant's showing of no jurisdiction, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint"). Plaintiff has not provided affidavits conflicting Defendants' claims. For the Court to subject Defendants to personal jurisdiction based on speculation that Defendants knew it was using a mark owned by a Florida company would be in stark contravention to the spirit of the Constitution.

Again, Defendants have no meaningful contacts with the forum. Defendants have never conducted any business in Florida. *Compare Thomas v. Brown*, 504 F. App'x 845, 848 (11th Cir. 2013) (finding insufficient contacts where defendants had no office, bank account, property, or marketing in Florida), *with Carmel & Co. v. Silverfish, LLC*, No. 1:12-CV-21328-KMM, 2013 WL 1177857, at *7 (S.D. Fla. Mar. 21, 2013) (holding defendant purposefully availed itself of Florida forum when its infringing produced a profit from Florida residents), *and Dohler*, 2017 WL 4621098, at *6 (holding defendants "reap[ing] pecuniary benefit from Florida customers" satisfied purposeful availament). And Defendants' limited contacts with the Attorney General—which the Attorney General initiated—do not demonstrate purposeful availment. *See e.g.*, *Lawson Cattle & Equip., Inc. v. Pasture Renovators LLC*, 139 F. App'x 140, 143 (11th Cir. 2005) (affirming district court's finding that defendant's isolated contact with a prospective Florida purchaser, "done at the behest of" the plaintiff did not constitute purposeful availment); *Future Tech. Today, Inc. v. OSF Healthcare Sys*., 218 F.3d 1247, 1251 (11th Cir. 2000) (per curiam) (finding no personal jurisdiction from limited telephonic contact and no visit to forum state); *Borg–Warner Acceptance Corp. v. Lovett & Tharpe, Inc*., 786 F.2d 1055, 1060 (11th Cir. 1986) (collecting cases where personal jurisdiction was not found over nonresidents for one-time transactions).

Accordingly, Plaintiff has not established that Defendants purposefully availed themselves of the forum.

### 3.   "Fair Play and Substantial Justice"

Having found Defendants did not purposefully avail themselves of the forum, the Court finds it would offend traditional notions of fair play and substantial justice to subject Defendants to personal jurisdiction in Florida. *Compare Diamond Crystal Brands, Inc*., 593 F.3d at 1267 (noting it is only after a plaintiff demonstrates purposeful availment that a defendant must address

whether the exercise of jurisdiction would violate traditional notions of fair play and substantial justice), *with JB Oxford Holdings, Inc. v. Net Trade, Inc*., 76 F. Supp. 2d 1363, 1368 (S.D. Fla. 1999) (declining to analyze "fair play and substantial justice" prong where defendant lacked sufficient Florida contacts).

IV.    **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**; and

2. Plaintiff's Second Amended Complaint is **DISMISSED without prejudice**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 31st day of October, 2019.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE